13 October 2000

No. 2--99--0744 

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE  ) Appeal from the Circuit Court

OF ILLINOIS,                    )  of McHenry County.

) 

     Plaintiff-Appellee, )

  )

v.  )  No. 88--CF--611                                                 )      

RICHARD P. HOCKENBERRY, SR., ) Honorable

                                )  Ward S. Arnold,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Richard P. Hockenberry, Sr., appeals from the order of the circuit court of McHenry County denying his motion pursuant to section 116--3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116--3 (West 1998)) for forensic testing not available at trial.  

In 1988, the defendant was charged with aggravated criminal sexual assault of his ex-wife (Ill. Rev. Stat. 1987, ch. 38, par. 12--14(a)(2) (now 720 ILCS 5/12--14(a)(2) (West 1998))) and home invasion (Ill. Rev. Stat. 1987, ch. 38, par. 12--11(a)(2) (now 720 ILCS 5/12--11(a)(2) (West 1998))). At trial, the defendant testified that he had been in his ex-wife's home at the time alleged, but he claimed that he entered the home with her consent and that he did not sexually assault her.  The jury convicted the defendant of both charges, and the court sentenced him to consecutive 12-year prison terms.  This court affirmed the judgment.  
People v. Hockenberry
, No. 2--89--0779 (1991) (unpublished order under Supreme Court Rule 23).  

In 1999, the defendant filed a 
pro se
 motion for forensic DNA testing pursuant to section 116--3 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/116--3 (West 1998)). The petition alleged the following.  During the investigation of his criminal case, "samples" from which DNA could be obtained were collected from the defendant and his ex-wife.  Also, because the defendant was convicted of a sex offense, the Illinois State Police maintained his DNA profile.  The defendant further alleged that the identity of the perpetrator was an issue at his trial.  The DNA testing the defendant now sought had been available in 1989; however, the State's expert witness during the trial testified that no laboratories in Illinois were conducting DNA testing at that time.   The defendant alleged that the samples were still in the possession of a police crime laboratory and had not been replaced, altered, or tampered with in any way.  The defendant alleged that the requested DNA testing was relevant to his assertion of innocence.

The trial court denied the defendant's motion, explaining  that "[d]efendant's identity was not an issue in his trial and the defendant has provided no prima facie evidence thereof."  The court denied the defendant's motion to reconsider, and he timely appealed.  On appeal, the defendant argues that the denial of his motion must be reversed because the trial court erred in ruling that identity was not at issue at trial.

The State asserts that this court lacks jurisdiction to hear this appeal because the denial of the defendant's motion was not a final judgment.  However, we agree with 
People v. Savory
, 309 Ill. App. 3d 408, 411-12 (1999), 
appeal allowed
, 188 Ill. 2d 578 (2000), that the denial of a section 116--3 motion is final and immediately appealable.  The denial of a section 116--3 motion ends a distinct proceeding on the merits by holding that the defendant has no right to the relief he seeks.  See generally 
Flores v. Dugan
, 91 Ill. 2d 108, 112 (1982) (final order is one that determines litigation on the merits).  Without a right to appeal, the defendant would be without an opportunity to seek review of the trial court's determination.  
Savory
, 309 Ill. App. 3d at 411-12.

We turn to the merits.  The defendant's appeal hinges on the application of section 116--3, which provides:

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial.  Reasonable notice of the motion shall be served upon the State.

(b) The defendant must present a prima facie case that:

     (1) identity was the issue in the trial which   resulted in his or her conviction; and

  (2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

  (1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence;  

  (2) the testing requested employs a scientific method generally accepted within the relevant scientific community."  725 ILCS 5/116--3 (West 1998).

The defendant argues that, contrary to the court's ruling, identity was the issue at his trial.  The defendant reasons that, to obtain a conviction on either charge, the State had to prove the defendant's "identity as the perpetrator" and not merely "the personal identification of a given criminal defendant."

When reviewing a trial court's ruling on a motion brought pursuant to section 116--3 of the Code, the appropriate standard of review is 
de
 
novo
.  
Savory
, 309 Ill. App. 3d at 412.  Such a standard is appropriate because the trial court's decision on such a motion is necessarily based upon its review of the pleadings and the trial transcripts and is not based upon its assessment of the credibility of the witnesses.  
Savory
, 309 Ill. App. 3d at 412.  Accordingly, the trial court is not in a better position than the reviewing court to decide the merits of the defendant's motion.  
Savory
, 309 Ill. App. 3d at 412.

In construing section 116--3 of the Code, we are obliged to give the statutory language its plain and ordinary meaning.  
People v. Stevens
, 315 Ill. App. 3d 781, 784 (2000).  The goal of statutory construction is to effectuate the intent of the legislature, which is best demonstrated by the statute's plain language.  
People v. Frieberg
, 147 Ill. 2d 326, 345 (1992).  In determining intent, a court may also consider the reason and necessity of the law, the evil sought to be remedied and the purpose to be achieved.  
Frieberg
, 147 Ill. 2d at 345.

Section 116--3(b)(1) requires a defendant who seeks DNA testing to present a 
prima facie
 case that "identity was the issue" in the trial that led to his conviction.  725 ILCS 5/116--3(b)(1) (West 1998).  Customarily, when courts speak of "identity" in a criminal case, they are referring to whether the defendant was indeed the perpetrator or whether somebody else committed the crime.  See, 
e.g.
, 
People v. Howard
, 303 Ill. App. 3d 726, 730-31 (1999); 
People v.  Miller
, 254 Ill. App. 3d 997, 1012 (1993).
  We therefore believe that, in order to invoke section 116--3, a defendant must make a 
prima facie
 showing that there was an issue at trial as to whether the defendant or somebody else committed the crime.

Initially, we reject the defendant's assertion that the identity of the perpetrator was an issue as to the charge of home invasion.  At trial, the defendant acknowledged that he had entered the victim's residence at the time in question.  Additionally, the victim testified that the defendant entered the back door of her residence without her consent and that the defendant beat her.  The police found that the back door to the victim's residence was broken, corroborating the victim's testimony.  In light of such evidence, there was no dispute at trial as to the defendant's identity as the individual who entered the victim's residence.  Therefore, DNA testing would not have the potential of establishing the defendant's actual innocence as to the charge of home invasion.  We therefore do not believe that the trial court erred in denying the defendant's motion for DNA testing as it related to his conviction of home invasion.

We therefore turn to a consideration of the defendant's conviction of aggravated criminal sexual assault.  At trial, the defendant acknowledged that he was present in the victim's residence but denied that he engaged in any sexual act with the victim.  However, seminal stains were found on the victim's panties and bed sheet following the alleged offense.   Vaginal swabs taken from the victim following the alleged offense also contained the presence of semen.  The State's forensic expert conducted testing on the vaginal swabs and stains and testified at trial that the defendant could not be eliminated as the possible source of the seminal material.  Given the defendant's denial that he had any sexual contact with the victim, we believe that the identity of the perpetrator was necessarily an issue at trial.  The State was obligated to prove that the defendant was indeed the individual who had committed an act of sexual penetration upon the victim.

The State asserts that identity was not an issue in the case because the victim identified the defendant as her attacker.  The State also notes that, when the police went to the victim's residence, they found the defendant naked and asleep at the victim's kitchen table.  Although such evidence certainly corroborated the State's theory that the defendant had committed a sexual assault on the victim, it was in direct conflict with the defendant's testimony that he did not engage in a sexual act with the victim.  Therefore, the identity of the perpetrator was an issue in the case.  Unlike the authority relied upon by the State (see 
People v. Walls
, 224 Ill. App. 3d 885 (1992)), the defendant in the instant case did not testify that he engaged in a consensual sexual act; rather, he denied having any sexual contact with the victim.  We therefore believe that the defendant has made a 
prima
 
facie
 showing that identity was an issue during the trial that led to his conviction.

However, the inquiry required by section 116--3 does not end there.  The statute further provides that the defendant is only entitled to additional scientific testing if the result of the testing "has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence."  725 ILCS 5/116--3(c)(1) (West 1998).  The plain and ordinary meaning of this provision is that the trial court must order testing where there is a "potential" that evidence "materially relevant" to the defendant's assertion of innocence may result.

We believe that the DNA testing requested by the defendant has the potential to produce evidence that would be materially relevant to the defendant's assertion of innocence as to the charge of aggravated criminal sexual assault.  If the results of the DNA testing show that the semen found in the vaginal swabs and the stains on the victim's panties and bed sheet did not belong to the defendant, such results would corroborate the defendant's assertion that he did not commit an act of sexual assault upon the victim.  Such evidence would certainly be "materially relevant" to the defendant's assertion of innocence.

The State argues that the defendant is not entitled to the additional forensic testing because DNA analysis would not establish the defendant's actual innocence.  The State notes that the victim testified that she had sexual intercourse with another individual prior to the alleged offense.  The State argues that this other person could have been the source of the semen found in the vaginal swabs and on the victim's panties and bed sheet.  The State therefore concludes that, even if the DNA testing established that the seminal material did not match the defendant, it could not establish the defendant's actual innocence of the crime of aggravated sexual assault.

In support of its argument, the State relies upon 
People v. Savory
, 309 Ill. App. 3d 408 (1999).  In that case, the defendant sought to have PCR testing performed on a pair of bloodstained pants found in the defendant's residence to determine if the blood on the pants belonged to the murder victim.  
Savory
, 309 Ill. App. 3d at 411.  The reviewing court held that the defendant was not entitled to the additional testing because the test results would not have the potential to exonerate him.  
Savory
, 309 Ill. App. 3d at 415.  The court noted that a negative blood match could suggest that the defendant did not wear the particular pants at the time of the murder or that he might have committed the crimes without getting the victim's blood on the pants.  
Savory
, 309 Ill. App. 3d at 415.  The court held that, although the results of the testing might weaken the State's case, the potential results would not rise to the level of exculpation contemplated by section 116--3.  
Savory
, 309 Ill. App. 3d at 415.  See also 
People v. Stevens
, 315 Ill. App. 3d at 784 (where the defendant had been convicted of murder, trial court had properly refused to allow DNA testing of blood found on a pillowcase at the hotel room where the victim was killed because evidence would not necessarily exonerate the defendant).

Justice Holdridge dissented in 
Savory
, arguing that the majority's analysis was at odds with the plain language of section 116--3.  Justice Holdridge noted that the plain and ordinary meaning of the statutory language required the trial court to order testing where there was a "potential" that "materially relevant" evidence would result from the testing.  
Savory
, 309 Ill. App. 3d at 416 (Holdridge, J., dissenting).  He also noted that the language of the statute indicated no legislative intent to limit the use of scientific testing only to situations where the testing would result in total vindication.  
Savory
, 309 Ill. App. 3d at 416 (Holdridge, J., dissenting).  After noting that the bloodstained pants were the key piece of physical evidence against the defendant, Justice Holdridge concluded that the defendant's request for DNA testing should have been allowed as the results would have been materially relevant to the defendant's claim of actual innocence.  
Savory
, 309 Ill. App. 3d at 417 (Holdridge, J., dissenting).

Based upon our examination of the language of section 116--3, we agree with Justice Holdridge that the application of the statute is not limited to those situations where additional scientific testing would result in total vindication.  Although forensic testing is a powerful evidentiary resource, it will not always permit an absolute determination as to the defendant's guilt or innocence.  To permit additional scientific testing only in those instances where the testing would result in the defendant's absolute and total vindication would unnecessarily preclude the production of new evidence directly relevant to the defendant's  assertion of innocence.  Additionally, such a rule is at odds with the plain language of the statute which only requires that the testing have the "potential" to produce evidence that is "materially relevant."  725 ILCS 5/116--3(c)(1) (West 1998).

Turning again to the instant case, we agree with the State that it is possible that the defendant may have committed the crime even if the DNA testing established that the seminal material found did not match the defendant.  However, we believe that such evidence would nonetheless support the defendant's testimony that he did not engage in a sexual act with the victim.  Such evidence would therefore be "materially relevant" to the defendant's claim of innocence.  Under these circumstances, we believe that the requirements of section 116--3(c)(1) have been satisfied.

The State also asserts that the trial court properly denied the defendant's motion because the technology for the DNA testing that the defendant now requests was available at the time of trial.  See 725 ILCS 5/116--3(a) (West 1998).  We believe that the State's contention is without merit.  At trial, the State's own forensic expert testified that no laboratories in Illinois were performing DNA testing.  Based on such testimony, we believe that the defendant has established that DNA testing was not available at the time of his original trial.

In disposing of the defendant's motion for additional testing, the trial court did not inquire or make any findings as to whether the defendant made a 
prima
 
facie
 showing that the samples to be tested were subject to a chain of custody sufficient to establish that they had not been "substituted, tampered with, replaced, or altered in any material aspect."  725 ILCS 5/116--3(b)(2) (West 1998).  Accordingly, we must remand the matter to the trial court to conduct further proceedings as to this issue.  On remand, if the trial court finds that the defendant has made the requisite 
prima
 
facie
 showing concerning the chain of custody, then it shall grant the defendant's motion for additional scientific testing as it relates to his conviction of aggravated criminal sexual assault.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion. 

Affirmed in part and reversed in part; cause remanded for further proceedings.

McLAREN and GALASSO, JJ., concur.