1st Division
Filed: 4-23-07

No. 1-05-0515

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | Nos. 82 C 12459, 82 C 12460 |
| | ) | |
| GREGORY MOORE, | ) | Honorable |
| | ) | Paul P. Biebel, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Defendant Gregory Moore appeals from an order of the circuit court of Cook County

entered on February 24, 2005, denying his *pro se* motion for deoxyribonucleic acid (DNA)

testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3

(2004)). On appeal, defendant contends that (1) the trial court erred in denying his motion for

DNA testing because the identity at issue requirement of section 116-3 is unconstitutional as

applied to him and (2) that the trial court violated defendant's due process rights by ruling on

issues beyond the understood scope of the hearing which resulted in the February 24, 2005,

dismissal. We affirm.

BACKGROUND

According to the memorandum opinion and order of the trial court the background to this

case is as follows:

At some time between midnight and 1 a.m., on October 27, 1982, T.R. was returning to her apartment in the Lakeview neighborhood of Chicago. The defendant grabbed her, put a gun to her head, and forced her into her apartment. While there, defendant repeatedly raped T.R. and then compelled her to perform oral sex while defendant held a handgun directed at her head.

On November 23, 1982, defendant entered the apartment of L.M. in the Lincoln Park neighborhood of Chicago around 6:55 p.m. The defendant pointed a gun at her head, demanded money and jewelry. After L.M. gave him the items he demanded, defendant bound, gagged, and raped her.

On December 10, 1982, at around 8 p.m., K.D. was returning to her apartment located in the Wrigleyville neighborhood in Chicago. The defendant exited a vehicle driven by Virgie Peterson and approached K.D. Defendant held a silver handgun to K.D.'s head and demanded her money. He took approximately $60 and was driven away by Peterson in the same vehicle. Only four hours later, defendant and Peterson robbed R.K. in the Lincoln Park neighborhood in Chicago with the aid of the same silver handgun. R.K. was walking in a gangway of her building when defendant approached her from behind, put his arm around her shoulders, led her to a lower-level apartment and pushed her against a wall. Defendant put the silver gun to her head, told her to stay quiet and demanded her money and wedding ring. When R.K. refused to surrender her wedding ring, a struggle ensued during which defendant tried to remove the ring. R.K. screamed and defendant threatened to shoot her. He took her purse and fled.

Defendant was subsequently arrested with Peterson in the south side of Chicago and charged with these crimes. He admitted his guilt to police officers after being found in

2

possession of R.K.'s purse. Defendant was convicted by a jury for the armed robbery of R.K. and sentenced to the Illinois Department of Corrections for 30 years on February 27, 1984. He did not testify at the trial but admitted his guilt at sentencing.

Defendant pleaded guilty to the armed robbery of K.D., the armed robbery and rape of L.M., and the rape of T.R. Pursuant to defendant's guilty plea on these charges and defendant's previous conviction for the armed robbery of R.K., defendant was sentenced to 20 years for the armed robbery and rape of L.M. concurrent with 20 years for the rape of T.R. and 20 years for the armed robbery of K.D. in the Illinois Department of Corrections on July 24, 1984, to run consecutively with 30 years previously given for a total of 50 years in the Illinois Department of Corrections.

On December 23, 2002, the defendant filed a *pro se* request for DNA testing on the rape cases pursuant to section 116-3 (725 ILCS 5/116-3 (West 2004)). The trial court appointed the Cook County Public Defender to represent the indigent defendant on October 2, 2003, 18 years after his conviction. That same day, defendant filed an amended motion requesting DNA testing and challenged the voluntariness of his guilty plea arguing that it was "based upon an unfulfilled promise of leniency, and exoneration of the rape charges on a later date."

The trial court heard oral argument from both defense counsel and the State relating to the motion for DNA testing on December 22, 2004. On February 24, 2005, the trial court denied defendant's motion and issued a 12-page memorandum opinion and order setting forth the reasons for the denial. This appeal followed.

ANALYSIS

3

On appeal, defendant first contends that the trial court erred in denying his motion for DNA testing because the identity at issue requirement of section 116-3 is unconstitutional as applied to him. Specifically, defendant argues that subsection (b)(1) of section 116-3 is unconstitutional because it bars defendant and all those similarly situated who pleaded guilty to crimes before the development of DNA technology from filing motions for DNA testing.

A trial court's ruling on a motion brought pursuant to section 116-3 of the Code of Criminal Procedure is reviewed *de novo*. *People v. Hockenberry*, 316 Ill. App. 3d 752, 755 (2000). Review in such cases is *de novo* because the trial court's decision regarding a section 116-3 motion is not based upon its assessment of the credibility of the witnesses but on its review of the pleadings and the trial transcripts. *Hockenberry*, 316 Ill. App. 3d at 755.

"Section 116-3 of the Code of Criminal Procedure of 1963 became effective January 1, 1998. Its purpose is to provide an avenue for convicted defendants who maintained their innocence to test *** genetic material capable of providing new and dramatic evidence materially relevant to the question of the defendant's actual innocence." *People v. Henderson*, 343 Ill. App. 3d 1108, 1114 (2003). Section 116-3 provides:

"§ 116-3. Motion for fingerprint or forensic testing not available at trial regarding actual innocence.

(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies pursuant to the alleged

offense, to those of the defendant, to those of other forensic evidence, and to those maintained under subsection (f) of Section 5-4-3 of the Unified Code of Corrections [730 ILCS 5/5-4-3], on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. Reasonable notice shall be served upon the State.

(b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence even though the results may not completely exonerate the defendant;

(2) the testing requested employs a scientific method

generally accepted within the relevant scientific community." 725

ILCS 5/116-3 (West 2004).

Defendant urges us on appeal, as he urged the trial court, to find the identity at issue requirement recited in subsection (b)(1) of section 116-3 unconstitutional. However, it is well established that cases should never be decided on constitutional grounds if alternate means exist, reaching constitutional issues only as a last resort. *People v. Lee*, 214 Ill. 2d 476, 482 (2005) ("courts should not compromise the stability of the legal system by declaring legislation unconstitutional when a particular case does not require it").

As the trial court correctly noted, this case can be decided without reaching the constitutional issue. The trial court correctly held that defendant was not entitled to DNA testing because he failed to meet the requirement of subsection (b)(2) of section 116-3. Subsection (b)(2) requires the defendant to establish a sufficient chain of custody to offer proof that DNA was collected from the crime scene, has not been altered, and is in the possession of the proper authorities. *People v. Johnson*, 205 Ill. 2d 381, 394 (2002). In examining the chain of custody requirement, courts look to proof of delivery of the evidence, presence and safekeeping. *People v. Gibson*, 287 Ill. App. 3d 878, 882 (1997).

Defendant failed to meet the chain of custody requirement. He alleges in his section 116-3 motion that "to the best of my belief, the material collected is in the possession of the proper authorities and has not been tampered with, replaced, or altered in any material respect." As the trial judge correctly noted, these conclusory statements fail to satisfy the chain of custody

prerequisite and essentially mirror the allegations made by the defendant in *People v. Jones*, 334 Ill. App. 3d 61, 64-66 (2002). Here, as in *Jones*, defendant has made absolutely no showing as to where the items are now, more than 20 years after his arrest, nor done anything to establish a chain of custody from the Chicago police department. Defendant does not allege with any specificity if the proper authorities took DNA, when the DNA was received, or mention anything pertaining to the current condition of the DNA. Therefore, the trial court properly denied defendant's section 116-3 motion for DNA testing because the defendant failed to meet the requirements of subsection (b)(2) of the statute.

We nevertheless address the defendant's argument that subsection (b)(1) of section 116-3 is unconstitutional.[1] Defendant argues that the identity at issue requirement of subsection (b)(1) is unconstitutional as applied to him because he could not knowingly waive a right that he did not know existed. In other words, defendant argues that he could not knowingly waive his right to DNA testing when he entered his guilty plea because DNA testing did not exist at the time of the waiver.

We first examine whether subsection (b)(1) is constitutional on its face. Statutes carry a very strong presumption that they are constitutional as written, and the party challenging the constitutionality of a statute bears the burden of rebutting this presumption. *People v.*

---

[1] The issue of whether the identity at issue requirement of section 116-3 is constitutional is currently pending before the Illinois Supreme Court. *People v. O'Connell*, 365 Ill. App. 3d 872 (2006), *appeal allowed*, 221 Ill. 2d 662 (2006).

*Kimbrough*, 163 Ill. 2d 231, 237 (1994). It is unclear whether the defendant challenges the legislation under due process or equal protection grounds. Therefore, we address both.

"The constitutional right to equal protection of the law guarantees that the State must treat similarly situated persons in a similar manner." *Kimbrough*, 163 Ill. 2d at 237. A law that implicates neither a suspect classification nor a fundamental right is subject to the rational basis test. *People v. Shephard*, 152 Ill. 2d 489, 500 (1992). Under this test, the statute need only be rationally related to a legitimate state goal. *Shephard*, 152 Ill. 2d at 500. Further, our review under the rational basis test is limited and generally deferential. *Shephard*, 152 Ill. 2d at 500.

The test used to determine whether a statute violates due process is " 'whether the statute is reasonably designed to remedy the evils the legislature has determined to be a threat to the public health, safety and general welfare.' " *Kimbrough*, 163 Ill. 2d at 242, quoting *People v. Bradley*, 79 Ill. 2d 410, 417 (1980), quoting *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 159 (1955) . Although expressed in different language, the tests used to determine the constitutionality of a statute under due process and equal protection are identical. *Kimbrough*, 163 Ill. 2d at 242. As is the case with challenges brought under equal protection, the rational basis test is applicable if the legislation does not implicate a fundamental right under a due process challenge. *Kimbrough*, 163 Ill. 2d at 242. Because section 116-3(b)(1) implicates neither a suspect classification nor a fundamental right, we apply the rational basis test.

As noted, the purpose of section 116-3 "is to provide an avenue for convicted defendants who maintained their innocence to test *** genetic material capable of providing new and dramatic evidence materially relevant to the question of the defendant's actual innocence."

*Henderson*, 343 Ill. App. 3d at 1114. "Balanced [against] this interest in exonerating innocent persons wrongly convicted is the interest in promoting the finality of criminal judgments." *People v. Pursley*, 341 Ill. App. 3d 230, 237 (2003). We need only conceive of one potential basis for subsection (b)(1) of section 116-3 to uphold its constitutionality. *Pursley*, 341 Ill. App. 3d at 237. Conceivably, the legislature included subsection (b)(1) to restrict the availability of DNA testing to those who maintained their actual innocence at trial because it sought to guard against frivolous requests by limiting the remedy to those cases where identity was truly at issue. *People v. Urioste*, 316 Ill. App. 3d 307, 313 (2000). Moreover, it is entirely irrelevant for constitutional purposes whether our conceived reason for the challenged legislation actually motivated the legislature. *Pursley*, 341 Ill. App. 3d at 237, quoting *People v. McLaughlin*, 324 Ill. App. 3d 909, 915 (2001). Accordingly, we are not persuaded by defendant's argument that section 116-3(b)(1) violates his equal protection rights or his due process rights.

Having determined that subsection (b)(1) of section 116-3 (725 ILCS 5/116-3(b)(1) (West 2004)) is constitutional on its face, we now examine whether subsection (b)(1) is unconstitutional as applied to this defendant. Defendant argues that the trial court's denial of his DNA testing request violated his due process rights because defendant could not knowingly waive what he did not know existed. We disagree.

It is well settled that a defendant entering a guilty plea must be fully aware of the *direct* consequences of the plea. *People v. Williams*, 188 Ill. 2d 365, 371 (1999). "If a consequence of the plea is collateral, then the defendant need not be advised of it before entering the plea" and "defendant's knowledge of the collateral consequences of a guilty plea is not a prerequisite to the

9

entry of a knowing and intelligent plea." *Williams*, 188 Ill. 2d at 371. Furthermore, "Future or contemplated, but uncertain, consequences are irrelevant to the validity of the guilty plea." *Williams*, 188 Ill. 2d at 371. A criminal court is in no position to advise a defendant on all the ramifications of a guilty plea personal to the defendant because the consequences of committing an offense are so numerous and logically unforeseeable that to require more would impose upon the trial court an impossible burden. *Williams*, 188 Ill. 2d at 371. A "court's obligation to ensure that a defendant understands the direct consequences of his plea encompasses only those consequences of the sentence that the trial judge can impose." *Williams*, 188 Ill. 2d at 371. A court is under no obligation to advise the defendant of collateral consequences including " 'loss of public or private employment, effect on immigration status, voting rights, possible auto license suspension, possible dishonorable discharge from the military, *or anything else.*' " (Emphasis in original.) *Williams*, 188 Ill. 2d at 372, quoting *Cox v. State*, 16 Kan. App. 2d 128, 130, 819 P. 2d 1241, 1243 (1991), quoting *State v. Heitzman*, 209 N.J. Super 617, 622, 508 A. 2d 1161, 1164 (1986). Defendant's due process rights were not violated here because defendant need not have been aware of the waiver of his DNA testing rights, a consequence which was collateral to the entry of his guilty plea.

Having determined that subsection (b)(1) of section 116-3 is constitutional both on its face and as applied to this defendant, we now turn to the impact defendant's guilty plea had on his ability to seek DNA testing. Defendant cannot satisfy the identity at issue requirement of subsection (b)(1) of section 116-3 because he pled guilty to the crime. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing

remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242, 23 L. Ed. 2d 274, 279, 89 S. Ct. 1709, 1711-12 (1969). " 'When a guilty plea is fairly and understandingly made, it admits every material fact alleged in the indictment and all the elements of the crime with which an accused is legally charged, and obviates the need of any proof whatsoever.' " *People v. Young*, 25 Ill. App. 3d 629, 634 (1974), quoting *People v. Wilfong*, 19 Ill. 2d 406, 409 (1960). A guilty plea necessarily admits identity because a conviction cannot stand if identification was not proved beyond a reasonable doubt. *People v. Moreno*, 18 Ill. App. 3d 347, 348 (1974).

There is a split among the districts of our appellate court as to whether a defendant can seek DNA testing under section 116-3 notwithstanding defendant's guilty plea at trial. One Illinois appellate case categorically bars a defendant from the opportunity to later request DNA testing when that defendant has pleaded guilty to the crime. *People v. Lamming*, 358 Ill. App. 3d 1153 (5th Dist. 2005), holds that the plain and unambiguous language section 116-3(b)(1) presupposes the existence of a trial and a conviction resulting from that trial, because without a trial, there is no way to satisfy the identity at issue requirement.

Another Illinois case reversed a trial court's decision to deny DNA testing when a defendant pleaded guilty but was not sure of his guilt. *People v. O'Connell*, 365 Ill. App. 3d 872 (1st Dist. 2006), *appeal allowed*, 221 Ill. 2d 662 (2006), involved a defendant who was convicted of sexual abuse and murder. The defendant entered a guilty plea while contending that he had no memory of the offense, presented testimony that he was drunk at the time of the offense, and offered evidence that he often did not remember what he did when he was drunk. *O'Connell*,

11

365 Ill. App. 3d at 874. An expert confirmed that alcoholics could experience such a pattern of memory loss. *O'Connell*, 365 Ill. App. 3d at 874. The appellate court remanded the case to the trial court because it was clear that by entering his guilty plea the defendant did not intend to concede identity. *O'Connell*, 365 Ill. App. 3d at 878. Rather, he entered the guilty plea because the evidence against him seemed overwhelming. *O'Connell*, 365 Ill. App. 3d at 878.

We are not prepared to hold, as the Fifth District of our court held, that a guilty plea categorically divests a defendant of the opportunity to later request DNA testing. However, we also find *O'Connell* inapplicable to this case. As noted, *O'Connell* involved a situation where a defendant pleaded guilty to the crimes of sexual assault and murder while protesting his actual guilt. Nothing in the record indicates that the defendant in this case ever protested his actual guilt prior to entering his guilty plea. We therefore hold that the trial court correctly determined that defendant could not satisfy section 116-3(b)(1).

Defendant also argues that his guilty plea was involuntary because it was based on an "unfulfilled promise" of leniency. Defendant suggests he was promised that he would receive three 20-year prison terms to run concurrently with the 30-year prison term he received for the armed robbery of R.K. in exchange for his guilty plea to the rapes. Allegedly, defendant later learned counsel had misinformed him and he was sentenced to a consecutive term of imprisonment causing defendant to receive a total prison term of 50 years. We are not persuaded by defendant's argument.

As the trial court noted, the defendant failed to object to the plea agreement in open court when the sentencing judge sentenced him to three 20-year concurrent prison terms to run

12

consecutively with the 30-year prison term he received for the armed robbery of R.K. causing defendant to serve a total prison term of 50 years although he was expecting a total term of 30 years according to the alleged promise of leniency. The defendant also waited more than 20 years to challenge the voluntariness of his plea. We therefore find that the defendant's guilty plea was knowingly and voluntarily made and defendant's challenge to the plea disingenuous.

Defendant's final argument is that the trial court violated defendant's due process rights by ruling on issues beyond the understood scope of the hearing, which resulted in the February 24, 2005, dismissal. Defendant claims that the oral arguments held on December 22, 2004, were held solely to determine the constitutionality of subsection (b)(1) of section 116-3. Specifically, defendant claims that it was error for the trial court to reach the issue regarding the sufficiency of defendant's section 116-3 motion for DNA testing because defendant was not prepared to address that issue at oral argument.

The record does not indicate that the December 22, 2004, oral argument was set only for arguments regarding the constitutionality of subsection (b)(1) of section 116-3. If there is evidence indicating that the hearing was restricted to that legal issue, defendant has failed to provide it in the record of this case.

"The appellant has the burden of providing a sufficiently complete record on appeal so that the reviewing court is fully informed regarding the issues to be resolved; in the absence of a complete record on appeal, it is presumed that the trial court's judgment conforms to the law and has a sufficient factual basis." *People v. Odumuyiwa*, 188 Ill. App. 3d 40, 45-46 (1989). The only evidence of the restriction on the hearing was defense counsel's assertion, contained in the

trial transcript, that the hearing was restricted to the issue of the constitutionality of subsection (b)(1) of section 116-3. However, also in the trial transcript is defense counsel's argument regarding the issue of actual innocence and the availability of DNA technology at the time of defendant's guilty plea. Moreover, defense counsel had more than a year to conduct discovery and seek out DNA, if it existed in this case. As noted, the public defender was appointed to defendant's case on October 2, 2003, and oral argument on defendant's section 116-3 motion was held on December 22, 2004. It does not conclusively appear from the transcript that the hearing on December 22, 2004, was restricted solely to the constitutional question, nor does it appear that defendant did not have ample opportunity to seek discovery to satisfy the chain of custody element of section 116-3. Accordingly, we find defendant's argument not persuasive.

Defendant has made no argument in his brief that the trial court erred when it ruled that defendant's section 116-3 motion was insufficient because defendant failed to allege any new evidence demonstrating defendant's actual innocence. As a consequence, the issue of whether the trial court erred in ruling that the defendant's motion was insufficient is waived. 210 Ill. 2d R. 341 (h)(7).

## CONCLUSION

For the foregoing reasons we affirm the judgment of the circuit court of Cook County. This court finds that defendant's motion for DNA testing was properly denied by the trial court because defendant failed to satisfy the chain of custody requirement of section 116-3. This court also finds that subsection (b)(1) of section 116-3 is constitutional both on its face and as applied to this defendant. We find that the trial court did not err in addressing the sufficiency of the

14

defendant's motion because nothing in the record indicates that the scope of the hearing was restricted to argument regarding the constitutionality of subsection (b)(1) of section 116-3.

Affirmed.

CAHILL and GARCIA, JJ., concur.